UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 16-30020-MGM-2 |
| JAMIL ROMAN, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
FIRST MOTION TO SUPPRESS
(Dkt. No. 126)

October 10, 2017

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Presently before the court is a Motion to Suppress filed by Jamil Roman ("Defendant"), in which he seeks an order suppressing the fruits of searches of his person, his business, and his residence. (Dkt. No. 126.) As clarified at the hearing, Defendant makes two arguments in support of his request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).[1] First, Defendant argues the affidavit in support of the search warrants contains an intentional or reckless misrepresentation regarding the location of a drug transaction. Second, Defendant argues the affidavit intentionally or recklessly omitted material information purportedly undermining the assertion that he was involved in a drug-trafficking organization. For the following reasons, the

---
[1] Apart from the *Franks* issue, Defendant also argues that he was subjected to a warrantless arrest which was not supported by probable cause prior to the search of his business and that recovery of the items seized from his person exceeded the scope of the search warrant. As explained at the hearing, the court will address these arguments, if necessary, after completing the *Franks* inquiry. Defendant additionally argues the contents of the affidavit in support of the search warrants failed to establish probable cause for the searches, particularly as to the search of his residence. Because this "four-corners" analysis is necessarily affected by the *Franks* issue, it, too, must await completion of the *Franks* inquiry. *See United States v. Fleury*, 842 F.3d 774, 778 (1st Cir. 2016).

court finds Defendant has made the required substantial preliminary showing entitling him to a *Franks* hearing as to his first argument but not as to his second.

II. BACKGROUND

The search warrants at issue were authorized by United States Magistrate Judge Kenneth Neiman on March 21, 2014. In support of the warrants,[2] Special Agent Scott Smith of the DEA submitted a 49-page affidavit describing the government's investigation. (Dkt. No. 131, Ex. A.) The bulk of the affidavit focused on Javier Gonzalez, the purported leader of a drug-trafficking organization, and his transportation of drugs from Texas to Massachusetts using hidden compartments in automobiles. (*Id.*)

As relevant here, the affidavit provided the following information related to Defendant. In January of 2014, agents executed a search warrant at the residence of an individual known as "Confidential Human Source 1" ("CHS1"), seizing three kilograms of cocaine. (*Id.* ¶ 15.) CHS1 agreed to cooperate with law enforcement and stated that he obtained the three kilograms of cocaine from Defendant on behalf of Gonzalez. (*Id.* ¶ 16(a).) According to CHS1, Defendant "is a close criminal associate of Gonzalez and oversees distribution of the narcotics for Gonzalez." (*Id.*) CHS1 recorded a handful of conversations with Gonzalez and Defendant, during which CHS1 told them the three kilograms had been stolen during a robbery and they discussed the quality of certain hidden compartments. (*Id.* ¶ 17, 18, 20, 28, 36.) During one meeting, "while discussing CHS1's safety during drug transactions, [Defendant] showed CHS1 a firearm . . . in his possession." (*Id.* ¶ 18.) During another meeting at Defendant's business, Defendant stated he suspected he was under surveillance and indicated he may "shut down for a while and cool off." (*Id.* ¶ 37.) At a separate meeting, Defendant told CHS1 that they were "dry," a term meaning there was not a current supply of drugs. (*Id.* ¶ 38) In addition, Agent Smith stated, based on his training and experience, "that it is generally a common practice for drug traffickers to store their drug inventory, drug related paraphernalia, and drug related records . . . in their businesses, residents and vehicles"; and

---

[2] In addition to separate search warrants directed at Defendant's business and residence, the government obtained four additional warrants to search addresses associated with two other individuals: Javier Gonzalez and David Dulchinos.

"[p]ersons involved in significant drug trafficking typically conceal in their residences, businesses, and automobiles large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from narcotic trafficking activities." (*Id.* ¶¶ 44, 48.)

III. STANDARD

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element." *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015) (quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999)). "Under *Franks*, 438 U.S. at 155, a defendant may request an evidentiary hearing to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit." *United States v. Hicks*, 575 F.3d 130, 138 (1st Cir. 2009). "To obtain a *Franks* hearing, a defendant must make 'a substantial preliminary showing' that: 1) the warrant affidavit contains a false statement made 'knowingly and intentionally, or with reckless disregard for the truth,' and 2) that 'the allegedly false statement was necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155-56) (internal citations omitted). "Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017) (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)).

IV. ANALYSIS

Defendant argues he is entitled to a *Franks* hearing due to both material misrepresentations and omissions in the affidavit supporting the search warrants. As for the misrepresentation, the affidavit at paragraph 54 discusses 56 Jackson Street, Holyoke, MA, which is the address of Defendant's business, TWC Auto Body. It states in relevant part: "As previously stated, CHS1 relayed that this is the location where he would obtain kilogram quantities of cocaine from the Gonzalez Organization to include the three kilograms which were seized from CHS1 in January of 2014." (Dkt. No. 131, Ex. A ¶ 54.) However, Defendant asserts, and the government does not

3

dispute, that the three kilograms of cocaine were not obtained from TWC Auto Body in January of 2014, citing a transcription of an interview in which CHS1 states he obtained the cocaine from Defendant at "712 Boston Road." (Dkt. No. 128 at 2.) In fact, the government takes the position that the court should excise the phrase "to include the three kilograms which were seized from CHS1 in January of 2014" when reviewing the affidavit. The government does not concede intentional or reckless conduct but contends, however, that the remaining portion of the affidavit as a whole provide the requisite probable cause to search 56 Jackson Street. Therefore, the government argues, the misstatement as to the location of the January of 2014 drug transaction was not material or necessary to the finding of probable cause and does not warrant a *Franks* hearing. The court does not agree.

The government's solution of excising the last portion of the sentence ("to include the three kilograms . . . ."), but retaining the remainder, does not fully address the language subject to a *Frank's* analysis. The inclusion of the phrase "[a]s previously stated" is similarly troubling. There is no other reference in the affidavit to TWC Auto Body being the location where CHS1 obtained drugs. While the government characterizes the phrase "[a]s previously stated" as simply inartful drafting, the court believes it—combined with the incorrect information as to the location of the January 2014 transaction—casts considerable doubt on the remaining assertion that CHS1 "would obtain kilogram quantities of cocaine" at TWC Auto Body. The court reads the "as previously stated" portion of the sentence not as an independent declaration that CHS1 obtained drugs at Defendant's business (as the government suggests), but as a false assertion that such a statement is provided elsewhere in the affidavit. In light of this, particularly the glaringly false assertion that the January of 2014 transaction occurred at Defendant's business, the court concludes Defendant has sufficiently demonstrated, for *Franks* purposes, intention or recklessness material to probable cause.

Moreover, even crediting the government's reading of paragraph 54, the bare assertion that CHS1 "would obtain" drugs from Defendant's business, without any additional detail or factual support, strikes the court as the type conclusory or generalized statement which fails to provide "a

4

substantial basis for determining the existence of probable cause."[3] *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("[A] mere conclusory statement . . . gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."); *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999) (holding that "the conclusory statements of the affiant that might otherwise have helped create probable cause are entirely without factual support" and, thus, the affidavit was insufficient); *see also United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) ("The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc))). Therefore, the court rejects the government's argument that paragraph 54, despite the admitted misrepresentations, still provides probable cause as to the nexus element.

Nor is the court convinced the rest of the affidavit suffices to provide probable cause to search the business at 56 Jackson Street such that paragraph 54 is immaterial. The remainder of the affidavit alleges Defendant distributes drugs on behalf of Gonzalez, provided the three kilograms of cocaine to CHS1 which were seized in January of 2014, brandished a firearm during a meeting with CHS1,[4] and discussed the trafficking operation at meetings with CHS1 and Gonzalez (one of which occurred at Defendant's business). These allegations on their own, the court concludes, do not create a sufficient link between the criminal activity and Defendant's business. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). What is

---

[3] In fact, Defendant asserts in an affidavit that he reviewed nine pages of CHS1's debriefing from January 14, 2014 and other DEA reports created between January of that year and the date of his arrest, and none of the documents reflect that CHS1 obtained drugs at Defendant's business. (Dkt. No. 128, at 2.) Although Defendant appends a portion of the typed debriefing to his affidavit—reflecting that cocaine seized from CHS1 in January of 2014 was delivered at 712 Boston Road—he has not provided the entirety of these documents to the court.

[4] Defendant alleges, and the government has not disputed, that the firearm seized from Defendant prior to the search of his business was purchased legally and he was licensed to carry it.

missing here is "any factual basis which would indicate that contraband or evidence of alleged criminal behavior would be found at the . . . address." *United States v. Rosario*, 918 F. Supp. 524, 530 (D.R.I. 1996). "[A] suspect's 'status as a drug dealer, standing along, [does not] give[] rise to a fair probability that drugs will be found in his home." *Brown*, 828 F.3d at 383 (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)); *see also United States v. Eng*, 571 F. Supp. 2d 239, 249 (D. Mass. 2008) ("The mere fact, however, that a defendant has dealt in drugs, without more, will not support such an inference, nor will such an inference be drawn merely from the fact that he has conducted a drug transaction at a place near his home."). Instead, there must be "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Brown*, 828 F.3d at 383; *see also id.* at 384 ("[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer."). The same is true of a business address.

In addition, some allegations in the affidavit arguably undercut the inference that any drugs would likely be found at his business address at the time of the search.[5] In the weeks preceding the search warrant application, Defendant informed CHS1 both that he was "dry" and that he suspected law enforcement surveillance and would likely "shut down for a while and cool off." (Dkt. No. 131, Ex. A ¶¶ 37-38.) Moreover, although the affidavit stated "CHS1 relayed that he believed Gonzalez would have [Defendant] fix the hidden compartment to make it look less suspicious," the affidavit makes clear that the vehicles containing the hidden compartments were stored (and presumably worked on) at Gonzalez's separate business locations, not at this Defendant's business. (*Id.* ¶¶ 33, 37, 51-52.)

---

[5] The court recognizes that the warrant encompassed a broad search for evidence not limited to a search for drugs. As this issue is better suited for a "four-corners" analysis, the court does not need to address it for the purposes of a *Frank's* inquiry.

6

Granted, the affidavit also includes Agent Smith's opinion that evidence of criminal activity is often kept at drug dealers' business and residence. That alone may be insufficient, however, especially if there are reasons to doubt the affiant's credibility based on intentional or reckless misrepresentations. "To permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *Rosario*, 918 F. Supp. at 531; *see also United States v. Ribeiro*, 397 F.3d 43, 50-51 (1st Cir. 2005). Accordingly, the court finds Defendant is entitled to a *Franks* hearing as to the misrepresentation in paragraph 54 of the affidavit.

The court, however, reaches a different conclusion as to the omissions argument. Defendant argues the affidavit failed to include the fact that two informants on Gonzalez's operation did not provide information about Defendant's involvement. In support, he cites portions provided of a sealed affidavit in support of a separate search warrant, not directed at the Defendant, which apparently focused on a distinct aspect of Gonzalez's drug-trafficking organization. The court finds this information does not rise to the level of a material omission. The sealed portions provided do not suggest a full review on each member of Gonzalez's operation. Accordingly, the fact that Defendant is not mentioned in the excerpts provided is not surprising, given that the affidavit is directed at separate individuals and components of the drug-trafficking scheme.

V. CONCLUSION

For the foregoing reasons, the court ORDERS that a *Franks* hearing be held as to the misrepresentation regarding the location of the drug transaction discussed in paragraph 54 of the affidavit.

      /s/ Mark G. Mastroianni
    MARK G. MASTROIANNI
    United States District Judge